# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TRAVELODGE HOTELS, INC.,

      Plaintiff,

        v.                                   C-1-01-784

GOPAL GOVAN,

      Defendant/Third-Party Plaintiff,

        v.

CINCINNATI TRAVELODGE,

      Third-Party Defendant.

## ORDER

This matter is before the Court upon the following motions: (1) plaintiff Travelodge Hotels, Inc.'s motion for summary judgment on its claims against defendant/third-party plaintiff Gopal Govan and on Govan's counterclaims (doc. 31), Govan's response (doc. 36, 39), and THI's reply (doc. 52); (2) third-party defendant Cincinnati Travelodge's motion for summary judgment on Govan's cross-claims (doc. 33), Govan's response (doc. 40), and Cincinnati Travelodge's reply (doc. 48); (3) Govan's motion for a jury trial (doc. 46), plaintiff's opposing memorandum (doc. 54), and Govan's reply (doc. 56); (4) plaintiff's motion for leave to file sur-reply in

1

connection with the motion for a jury trial (doc. 57) and Govan's opposing memorandum (doc. 58); and (5) Govan's motion to strike sur-reply (doc. 59).

## I. Procedural history

Plaintiff Travelodge Hotels, Inc. (THI) filed this action against defendant Gopal Govan. The action arises out of a License Agreement which THI entered into with Govan for the operation of a 71-room guest lodging facility in Cincinnati, Ohio (the Facility) for a 15-year term. THI alleges that beginning in August 2000, Govan repeatedly failed to operate the Facility in accordance with THI's standards. Govan was found to be in default of his obligations, and THI terminated the License Agreement. THI claims that following the termination of the License Agreement, Govan continued to use its trademarks without authorization and despite having received notification from THI to cease and desist.

THI brings the following claims for relief: (1) a claim for trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a) and (c) (Count I); (2) a demand for an accounting (Count II); (3) a claim for liquidated damages arising as a result of the termination of the License Agreement; (4) a claim for actual damages for the premature termination of the License Agreement as an alternative to liquidated damages (Count IV); (5) a breach of the License Agreement in the form of failure to remit the recurring fees (Count V); (6) a claim for unjust enrichment based on Govan's failure to compensate THI (Count VI); and (7) a claim for liquidated or actual damages and recurring fees pursuant to the terms of the Guaranty (Count VII).  Govan has asserted a counterclaim against THI alleging that in the fall of 1999, Govan negotiated with Cincinnati Travelodge for the purchase of the Facility. Govan thereafter entered into a Purchase and Sale Agreement with Cincinnati Travelodge. As a condition of the Purchase

Agreement, Govan was required to provide evidence that he had received franchise and license agreements to operate the Facility as a Travelodge. Govan alleges that THI and Cincinnati Travelodge made certain false representations to him or failed to disclose material facts in connection with the Purchase Agreement with Cincinnati Travelodge and the License Agreement with THI. Govan specifically alleges that THI agreed to have the property inspected prior to closing but no inspection took place, the fact that an inspection was to have taken place was material to Govan's decision to proceed with the closing of the property, THI knew that the inspection had not taken place but concealed this material fact from Govan with the intent of inducing Govan's reliance thereon, Govan justifiably relied on this concealed fact, and Govan has suffered damages as a result. In addition to a counterclaim for fraud, Govan also brought a counterclaim for negligence against THI, which the Court dismissed on THI's motion.

Govan also filed cross-claims against third-party defendant Cincinnati Travelodge. He claims (1) fraudulent misrepresentation based on an alleged false representation that the Facility had been inspected and had passed inspection when Cincinnati Travelodge  knew the statement to be false; (2) false misleading representations recklessly or knowingly made by Cincinnati Travelodge as to the income and revenue of the Facility; and (3) breach of a duty of good faith based on misrepresentations to Govan. Govan has voluntarily dismissed the second cross-claim.

3

## II. Undisputed facts

The parties have submitted proposed findings of fact and conclusions of law which the opposing parties have highlighted (docs. 38, 62, 63). The facts which the parties do not dispute are set forth herein.

1.  THI is a Delaware corporation with its principal place of business in New Jersey. THI is a guest lodging facility franchise system with the exclusive right to sublicense the use of various trade names and service marks (the Travelodge Marks).

2.  Govan is an individual citizen and resident of the State of Arkansas.

3.  Govan is involved with at least four other franchised businesses, including two Days Inns, a Super 8, and a Best Western.

4.  Cincinnati Travelodge previously owned the Facility, located at 3244 Central Parkway, Cincinnati, Ohio, and operated it as a Travelodge guest lodging facility pursuant to a license agreement with THI.

5.  In October of 1999, Govan received a telephone call from a woman named Sue Eastman, a representative of Cincinnati Travelodge, which was interested in selling the Facility.

6.  Govan had previously purchased properties through Ms. Eastman, and the purpose of her call on this occasion was to gauge Govan's interest in purchasing the Facility.

7.  The price quoted to Govan by Ms. Eastman for the purchase of the Facility was $1.4 million. Interested, Govan requested and was given additional information regarding the property. Specifically, Govan was provided with certain information pertaining to the financial condition of the Facility, including profit and loss statements.

4

8.     Govan also requested and was provided with copies of quality assurance reports prepared by THI. The reports were dated September of 1998 and June of 1999. Each of these reports indicated that the Facility had received a "passing" score from THI and thus verified to Govan that the Facility was in a condition acceptable to the franchiser, THI.

9.     On January 5, 2000, Govan entered into an agreement with Cincinnati Travelodge to purchase the Facility (the Purchase Agreement). Under the terms of the contract, Govan was specifically required to obtain the franchise and license agreements necessary to continue to operate the hotel as a Travelodge.

10.    While the Purchase Agreement had been signed in January, a number of months would pass between the time that Govan signed the Purchase Agreement and the time that the closing was to take place. During this time frame, the property would remain under the control of the seller (Cincinnati Travelodge) and Govan would have no input as to how the property would be managed or maintained.

11.    The parties dispute whether Govan informed Ms. Eastman that a quality assurance inspection would be needed prior to the closing, whether Ms. Eastman informed Govan that she would contact THI and have a representative from their quality assurance department call him, and whether THI contacted Govan and confirmed that a quality assurance inspection would be performed as requested.

12.    The Purchase Agreement required Govan to perform his own due diligence investigations of the Facility, and specifically obligated Govan to perform "such independent non-destructive investigations as [Govan] deem[ed] necessary or appropriate concerning the suitability of the Property and the physical conditions of all improvements."

13.    Govan visited the property in November 1999 and January 2000, at which time he inspected the exterior of the property, the main areas, a few guest rooms, the breaker boxes, and the plumbing.

14.    Govan did not hire an independent investigator to inspect the physical condition of the Facility. Instead, Govan relied upon the representations made by Cincinnati Travelodge's representative, Sue Eastman, regarding the Facility.

15.    On or about March 1, 2000, THI provided Govan with a punch list which described certain changes and upgrades to be made to the Facility once Govan had obtained a license to use the Travelodge name and began operating the Facility. The punch list, by its terms, set forth a schedule as to when certain improvements were to occur. The punch list specifically states that "[u]pgrades to property exterior, public and guestroom/bath areas will be required to meet current [THI] specifications."

16.    THI and Govan entered into a License Agreement on March 8, 2000. The License Agreement was not effective until after Govan first took possession of the property (the "Effective Date"), which was not scheduled to be until Govan completed the purchase of the Facility sometime in May 2000.

17.    Neither Govan nor THI had any obligations under the License Agreement until its Effective Date.

18.    THI provided Govan with a  revised punch list on or before March 16, 2000, which again identified certain improvements to be made on the property and which states that "[u]pgrades to property exterior, public and guestroom/bath areas will be required to meet current [THI] specifications."

6

19.   Pursuant to the License Agreement, Govan was to begin the punch list improvements no later than 30 days after the Effective Date and was required to complete such improvements within 120 days after the Effective Date.

20.   The License Agreement required Govan to make certain periodic payments to THI for royalties, service assessments, and other fees (the recurring fees).

21.   The License Agreement required Govan to operate the Facility in compliance with THI's "Systems Standards" as defined in the License Agreement, including THI's quality assurance requirements.

22.   The License Agreement included a provision which gave THI the right to conduct unannounced quality assurance inspections of the Facility (and unlimited re-inspections if the Facility received a failing score in the inspection) to determine whether the Facility was in compliance with THI's quality assurance requirements. (License Agreement §§ 3.8, 4.8).

23.   The License Agreement gave THI the right to terminate the Agreement with notice to Govan for various reasons, including Govan's failure to pay any amount due THI under the License Agreement and Govan's receipt of two or more notices of default under the License Agreement in any one-year period, whether or not the defaults were cured. (License Agreement § 11.2).

24.    The License Agreement includes a provision whereby Govan agreed that in the event of a termination of the Agreement pursuant to § 11.2, he would pay liquidated damages to THI in accordance with a formula specified in the License Agreement, i.e., future damages equal to the greater of $2,000 per room (which at 71 rooms equals $142,000) or 24 months times the average monthly recurring fees. (License Agreement § 12.1).

25.    The License Agreement provides that in the event of a termination of the Agreement, Govan is obligated to immediately cease using all of the Travelodge Marks. (License Agreement § 13).

26.    The License Agreement includes a provision whereby Govan is to "pay all costs and expenses, including reasonable attorneys' fees, incurred by [THI] in enforcing any provision of the [License] Agreement." (License Agreement § 17.4).

27.    Govan agreed that the License Agreement would be governed by and construed under the laws of the State of New Jersey. (License Agreement § 17.5).

28.    On February 21, 2000, two weeks before the License Agreement was signed, THI had inspected the Facility. On this occasion, the Facility received a failing score. THI and Govan agree that THI never informed Govan of this fact, while Cincinnati Travelodge disputes their position that THI never informed Govan of the failed inspection.

29.    The closing of the motel was scheduled to take place on May 12, 2000. On May 2, 2000, a THI inspector named Shane Blankenship visited the Facility in order to inspect it. After his arrival at the Facility, Mr. Blankenship identified himself as a Travelodge quality assurance inspector and asked to speak to the manager. It is THI's policy that the quality assurance inspector allow a motel's on-site manager to accompany him as he performs his examination of the premises. The parties agree that Mr. Blankenship left the premises without conducting the inspection. They disagree as to whether the manager informed Mr. Blankenship that the motel had been sold and that no inspection was necessary. The parties also disagree as to whether THI informed Govan that the inspection had not been performed.

30.    Govan visited the Facility on the date of the closing. He observed trash and other debris in front of the motel, cracks and holes in the parking lot, and boxes and a broken picture frame in the lobby. Govan did not further inspect the Facility and specifically did not inspect any of the guest rooms. THI disputes Govan's assertion that he spoke with the Facility's on-site manager, Tom Fuller, who informed Govan that the Facility had passed the most recent inspection.

31.    Govan proceeded with the closing of his purchase of the Facility.

32.    After the closing, Govan discovered that a number of individual room air conditioners were broken, many rooms were missing television sets and clock radios, and the phone and reservation systems were not working.

33.    There is no evidence that Govan contacted THI prior to closing to determine whether the inspection he allegedly requested had taken place or the results of any such inspection.

34.    On approximately May 12, 2000, Govan commenced operating the Facility pursuant to the License Agreement with THI.

35.    On August 14, 2000, THI conducted a quality assurance inspection of the Facility. By letter dated August 21, 2000, THI advised Govan that the Facility had received a failing score and, as a result, Govan was in default of his obligations under the Lease Agreement.

36.    THI provided Govan with the opportunity to enter into a written improvement plan with THI in an attempt to assist Govan in improving the Facility's quality and allowing him additional time to cure the default. Govan did not enter into an acceptable improvement plan.

37.    On December 13, 2000, THI conducted a second quality assurance inspection of the Facility. By letter dated December 21, 2000, THI advised Govan that the Facility had received a second consecutive failing score in the December 13, 2000 quality assurance inspection and, as a result, Govan remained in default of his obligations under the License Agreement, and that the License Agreement was subject to termination.

38.    Beginning in November 2000, Govan stopped paying THI the recurring fees owed to it. By letters dated November 16, 2000 and May 16, 2001, THI notified Govan of his financial defaults, provided him with 10 days to cure the defaults, and informed him that the License Agreement was subject to immediate termination without further notice to Govan. Govan does not dispute that he failed to pay recurring fees owed to THI pursuant to the License Agreement.

39.    The Facility failed to comply with THI's Systems Standards as required by the License Agreement.

10

40.    On August 21, 2001, THI sent Govan a letter terminating the License Agreement and

demanding payment of all outstanding recurring fees through the date of termination. In

addition, THI notified Govan that pursuant to the License Agreement he was required to

remove all items bearing the Travelodge Marks within ten days of his receipt of the notice,

and that he was required to pay to THI as liquidated damages the sum of $142,000 as

required in § 12 of the License Agreement for the premature termination of the

Agreement.

41.    Despite Govan's post-termination obligations, Govan failed to de-identify the Facility as

required by the License Agreement within ten days after termination and continued to

operate the Facility as a Travelodge guest lodging facility.

### III. Request for oral argument

Govan has requested oral argument on the motions for summary judgment. The legal and

factual issues involved in this case are not complex and they have been fully briefed by the

parties. Pursuant to Rule 7.1 of the Local Rules of the United States District Court for the

Southern District of Ohio, the Court therefore finds that oral argument is not necessary and

Govan's request for same is denied.

### IV. Summary judgment standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination

of an action.  This Court may only grant summary judgment as a matter of law when the moving

party has identified, as its basis for the motion, an absence of any genuine issue of material fact.

***Celotex Corp. v. Catrett***, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest

upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)).  The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *Id.* at 249 (citing *Cities Serv.*, 391 U.S. at 288-289).  If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted. *Anderson*, 477 U.S. at 249.

## V. Applicable law

The parties agree that THI's claims against Govan are governed by New Jersey law and that Govan's fraud claims against THI and Cincinnati Travelodge are governed by Ohio law.

Under New Jersey law, if the terms of a contract are unambiguous, the court may construe the contract terms as a matter of law. *Nevets, C.M., Inc. v. Nissho Iwai American Corp.,* 726 F.Supp. 525, 531 (D.N.J. 1989), *aff'd,* 899 F.2d 1218 (3d Cir. 1990). New Jersey law looks with favor upon provisions in agreements that fix specified amounts of damages in the event of a breach. *D.H.M. Indus., Inc. v. Central Port Warehouses, Inc.,* 127 N.J. Super. A.D. 499, 503, 318 A.2d 20, 23  (1973), *aff'd,* 64 N.J. 548, 318 A.2d 19 (1974). The standard for determining the validity of a stipulated damages clause is reasonableness. *Wasserman's, Inc. v. Township of Middletown,* 137 N.J. 238, 249, 645 A.2d 100, 106 (1994). A liquidated damages clause "must

constitute a reasonable forecast of the provable injury resulting from breach", and the harm must be impossible or very difficult to accurately estimate in order for the clause to be valid. *Wasserman's,* 137 N.J. at 249-250, 645 A.2d at 106-07; see also *Shree Ganesh, Inc. v. Days Inn Worldwide, Inc.,* 192 F.Supp.2d 774 (N.D. Ohio 2002). The reasonableness of a liquidated damages clause depends on conditions existing at both the time of the breach and at the time of the contract formation. *Wasserman's,* 137 N.J. at 257, 645 A.2d at 110.

The reasonableness and enforceability of a liquidated damages clause is a question of law for the court to determine, although the determination may require the resolution of underlying factual issues. *Wasserman's,* 137 N.J. at 257, 645 A.2d at 110. When ascertaining reasonableness, the court should consider the difficulty in assessing damages, the intention of the parties, the actual damages sustained, and the parties' bargaining power. *Shree,* 192 F.Supp.2d at 786 (citing *Metlife Cap. Fin. Corp. v. Washington Ave. Assoc.,* 159 N.J. 484, 732 A.2d 493, 497 (1999)). New Jersey courts have held that where commercial parties have comparable bargaining power, liquidated damages clauses between the parties are presumptively valid, and the burden is on the party opposing enforcement of the clause to demonstrate otherwise. *Central Steel Drum Co. v. Gold Cooperage, nc.,* 200 N.J. Super 251, 265, 491 A.2d 49, 57 (1985), *overruled on other gds., Kutzin v. Pirnie,* 124 N.J. 500, 591 A.2d 932 (1991).

Govan cites the *Shree* decision in support of his argument that the liquidated damages provision in issue is unenforceable. Applying New Jersey law, the Court in *Shree* determined that although three of the four reasonableness considerations weighed in favor of a finding of validity, the fourth factor, actual damages sustained, did not. 192 F.Supp.2d at 787. The Court relied on the fact that one method of calculation provided under the liquidated damages provision, i.e., the

13

number of rooms multiplied by $2,000, yielded an amount that was approximately five times greater than the amount yielded under the alternative calculation, i.e., recurring fees paid over the preceding 24-month period ($206,000 versus $40,000). *Id.* at 786-87. The Court found this to be a clearly excessive amount and concluded that the liquidated damages provision was therefore unenforceable. *Id.* at 787. On reconsideration, the Court held that the recurring fees method of calculating liquidated damages set forth in the provision was enforceable.

Under New Jersey law, in a breach of contract action, legal expenses can be recovered if the contract between the parties so provides. ***Papalexiou v. Tower West Condominium,*** 167 N.J. Super. Ch. 516, 530-31, 401 A.2d 280, 287 (1979). Recovery of attorneys' fees and costs pursuant to a voluntary agreement is viewed as part of the "actual, reasonable and necessary expense" of the litigant. *Id.* (citing ***Cohen v. Fair Lawn Dairies, Inc.,*** 86 N.J. Super. A.D. 206, 215, 206 A.2d 585, 590, *aff'd,* 44 N.J. 450, 210 A.2d 73 (1965)). Contracts which permit an aggrieved party to recover reasonable attorneys' fees as part of damages are presumed to be enforceable unless some larger public policy mandates a contrary result. ***Center Grove Assocs. v. Hoerr,*** 146 N.J. Super A.D. 472, 474, 370 A.2d 55, 56 (1977); see also ***Ramada Franchise Systems, Inc. v. Hanna Hotel,*** 147 F.Supp.2d 840, 849 (N.D. Ohio 2001).

The elements of a fraud claim under Ohio law are "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." ***Cohen v. Lamko, Inc.,*** 10 Ohio St.3d 167, 169, 462

N.E.2d 407, 409 (1984).

Silence will constitute an actionable misrepresentation only if the circumstances are such that the law recognizes a duty to speak. *Schulman v. Wolske & Blue Co., L.P.A.,* 125 Ohio App.3d 365, 372, 708 N.E.2d 753, 758 (1998)(citing *Fed. S. & L. Assn. v. Perry's Landing, Inc.,* 11 Ohio App.3d 135, 145, 463 N.E.2d 636, 647-48 (1983). A duty to disclose arises primarily when one party to a transaction has information that the other party is entitled to know because of a fiduciary or other similar relation of trust and confidence between them. *Federated Management Company v. Coopers & Lybrand,* 137 Ohio App.3d 366, 383-84, 738 N.E.2d 842, 855 (2000); see also *State v. Warner,* 55 Ohio St.3d 31, 53-54, 564 N.E.2d 18, 39-40 (1990)(citing *Chiarella v. United States,* 445 U.S. 222, 228 (1980)). This duty does not necessarily depend upon the existence of a fiduciary relationship, however, and may arise in any situation where one party imposes trust and confidence in the other because of that party's position, and the other party knows of this confidence. *Interim Healthcare of Northeast Ohio, Inc. v. Interim Services, Inc.,* 12 F.Supp.2d 703, 712 (N.D. Ohio 1998). A duty to make full disclosure may exist "where such disclosure is necessary to dispel misleading impressions that are or might have been created by partial revelation of facts." *Id.* (citing *Blon v. Bank One, Akron, N.A.,* 35 Ohio St.3d 98, 101, 519 N.E.2d 363 (1988)).

## VI. Motions for summary judgment

### A. THI's motion for summary judgment

THI contends that it is entitled to summary judgment on its claims because it is undisputed that Govan breached the License Agreement by failing to pay THI royalty and contractual fees due and owing under the Agreement and by failing to meet THI's quality assurance standards

15

under the Agreement. THI claims that Govan's counterclaim of fraudulent concealment is not a valid defense to its claims because THI owed no duty to Govan to disclose; there is no evidence that THI fraudulently intended to conceal the fact that an inspection had not been performed; THI had no fraudulent intent as demonstrated by Govan's allegations that THI attempted to perform a pre-closing inspection but was misled by Cincinnati Travelodge's representative into believing an inspection was not necessary; and there could be no justifiable reliance because Govan was personally aware of the condition of the property just prior to closing on the purchase.

In response, Govan asserts that a viable claim for fraud exists in that THI failed to inform Govan that the Facility had failed its two most recent quality assurance inspections. Specifically, Govan alleges THI failed to inform him that it had inspected the Facility and given it a failing score on February 21, 2000, and it had attempted to inspect the property just days before the closing and after Govan had requested a pre-closing inspection but was turned away by Cincinnati Travelodge employee Tom Fuller, as a result of which the Facility failed the inspection. Govan claims that THI had a duty to disclose such information. Govan concedes that the parties did not stand in a fiduciary relationship to each other. He claims, however, that a duty to disclose arose because (1) THI had made a partial revelation of the Facility's condition by disclosing the results of its inspections conducted in September 1998 and June 1999, and (2) disclosure of the fact that THI considered the Facility to be in an unacceptable condition at the time of the last inspection and that THI had been unable to complete the pre-closing inspection was necessary in order to place Govan on equal footing with THI. Govan claims that whether his reliance on THI's non-disclosures was justifiable is a question of fact which cannot be resolved on summary judgment and that the critical issue is not Govan's knowledge of the condition of the

property but THI's opinion as to the Facility's physical condition. In addition, Govan argues that there is evidence of fraudulent intent because THI had an incentive to insure that the closing occurred.

Govan states that if the License Agreement were held to be valid, he would not contest liability on the recurring fees issue. Govan argues, however, that the liquidated damages provision of the License Agreement is an unenforceable penalty. Govan agrees that the License Agreement is governed by New Jersey law and that New Jersey gives such provisions favorable treatment. He contends, however, that a liquidated damages provision is not enforceable where it is deemed punitive. Govan cites ***Shree*** for the proposition that the provision in issue is punitive because the amount which THI seeks, $142,000, is 24% greater than the amount of $108,336 which the alternative recurring fees calculation under the liquidated damages provision would yield. He argues that the figure of $2,000 per room used in the per room calculation is woven from whole cloth. Govan also asserts that there is no information in the record regarding the actual damages so as to provide a point of comparison, such as actual pre-termination occupancy rates, the average occupancy rates of other franchises, and the room rates charged by Govan and other franchisees. Govan therefore argues that if the Court finds as a matter of law that the provision is not unreasonable, a jury should determine whether the amount claimed is proportionate to THI's actual damages. Govan also argues that THI is not entitled to attorney fees because the parties did not stand in equal bargaining positions relative to one another.

In reply, THI asserts that it has established a breach of the License Agreement in that Govan failed to pay recurring fees and failed two inspections within a one-year period; there is no evidence to refute the recurring fee amount alleged; and Govan has not shown that the liquidated

17

damages provision is punitive. THI contends that the **Shree** decision cited by Govan for his liquidated damages argument does not support his position because the discrepancy between the two liquidated damages calculations in **Shree** was 490% whereas the disparity for the two methods of calculation provided in this case is only 24%. THI also argues that Govan fails to take into account potential damages over the life of the 15-year lease, which would amount to $704,184 using the monthly average recurring fee used by Govan in calculating liquidated damages. With respect to the fraud claim, THI asserts that it made no representation of compliance with its quality assurance standards, there is an integration clause in the License Agreement stating that Govan was not relying on any oral or written representations, Govan could not reasonably rely on the 1998 and 1999 inspection results since THI provided him punch lists specifying upgrades required to be made to meet THI's specifications, Govan never asked to see the results of the failed inspections, and Govan noticed the deteriorating condition of the property before he closed on it.

The Court finds as a matter of law that THI has established a breach of the License Agreement. It is undisputed that Govan failed to pay recurring fees in the amount of $72,231.57 due and owing under the Agreement and that he was in default of the terms of the Agreement twice within a one-year period of time. The question then becomes whether Govan has come forward with sufficient evidence to create a genuine issue of material fact as to whether THI committed fraud which invalidates the License Agreement. For the reasons set forth below, the Court finds that Govan has failed to carry his burden on his counterclaim for fraud against THI.

Initially, the Court finds that Govan has failed to come forward with evidence to show that THI had a duty to disclose to him the fact that the Facility failed inspections conducted in

18

February of 2000 and a few weeks before the closing date. Govan concedes that THI did not stand in a fiduciary relationship to him. He argues, however, that THI's disclosure of favorable 1998 and 1999 inspection results at his request gave rise to a continuing duty to disclose subsequent inspection results. The evidence shows that Govan requested inspection reports from THI at some point before the purchase was completed, in response to which THI provided to Govan inspection reports dated September 1998 and June 1999; that Govan did not request subsequent inspection reports following his initial request; that THI inspected the Facility following Govan's initial request and attempted to inspect the Facility on another occasion prior to the closing, with the Facility failing the inspection both times; and that although Govan requested THI to inspect the Facility before he closed on it, he did not follow up on his request and ask THI if it had performed an inspection and, if so, what the results of the inspection were.  There is no evidence that at the time THI provided copies of recent inspection reports to Govan at his request, there were more recent inspection reports available which THI failed to disclose to Govan. Under these circumstances, THI's compliance with Govan's initial request for it most recent inspection reports did not give rise to a continuing duty to disclose subsequent inspection results or somehow place Govan on unequal footing with THI so as to satisfy the duty to disclose element of Govan's fraud claim.

Second, Govan has not shown that he justifiably relied on any alleged concealment by THI. It was not reasonable for Govan to assume based on THI's silence that the Facility met THI's quality assurance standards at the time of the closing given that Govan personally observed prior to the closing that the property had deteriorated in the months leading up to the closing; he was obligated to conduct due diligence under the terms of the Purchase Agreement; and THI had

19

provided Govan with two punch lists specifically setting forth improvements which Govan was required to make in order to meet THI's "current specifications". Moreover, Govan was in a position to verify whether the Facility met quality assurance standards prior to the closing. He could have conducted his own inspection, he could have asked THI before entering into the License and Purchase Agreements whether subsequent inspections had been performed, or he could have asked THI to verify that the Facility was in compliance with THI's quality assurance standards as of the date of the purchase. Govan failed to take any such action, and there is no evidence that THI made any attempts to thwart efforts by Govan to determine if the Facility was in compliance with its standards or to conceal either its findings of noncompliance or the condition of the property. Under these circumstances, a reasonable factfinder could not determine that Govan justifiably relied on THI's silence to determine that the Facility met THI's quality assurance standards on the date of the closing.

Finally, Govan has not come forward with evidence to show that THI concealed information from him with the intention of misleading him. The mere fact that THI may have had an incentive to insure that the closing occurred does not, standing alone, permit an inference that THI fraudulently concealed information from Govan in order to make the closing happen. For these reasons, THI is entitled to summary judgment on Govan's counterclaim for fraud. Because fraud is not a valid defense to the enforceability of the License Agreement, THI is likewise entitled to summary judgment on its claim for breach of contract.

The issue then becomes the damages to which THI is entitled. The Court finds that Govan has failed to raise a genuine issue of fact as to whether the liquidated damages provision is enforceable. There is no evidence that the actual damages are easily calculated, that either party

20

did not intend to enter into or enforce the liquidated damages provision, or that the parties were not in equal bargaining positions. Nor does the evidence support a finding that the amount of actual damages as compared to liquidated damages makes the liquidated damages clause unreasonable. Govan has presented no evidence as to actual damages, and the discrepancy in the amounts which the alternative liquidated damages calculations under the License Agreement yield is not so great as to lead to the conclusion that the provision is unreasonable. Moreover, as noted by THI, Govan's calculations fail to take into account the fact that THI's actual damages are not necessarily limited to 24 months, which is the period of time used in calculating the liquidated damages sought by THI, but could potentially extend over the 15-year term of the lease. Because Govan has not shown that the liquidated damages provision is unreasonable in light of the actual damages sustained or in any other respect, the Court finds as a matter of law that the liquidated damages provision is enforceable.

Govan also challenges the attorney fees provision as unenforceable. Govan acknowledges that New Jersey courts will sustain a contractual provision permitting a prevailing party to recover attorney fees. He argues, however, that the New Jersey Supreme Court has granted relief from provisions in contracts that are deemed not to have been freely negotiated because of unequal bargaining power of the parties. See *Vasquez v. Glassboro Service Ass'n., Inc.,* 83 N.J. 86, 101-103, 415 A.2d 1156, 1164-65 (1980). Govan claims that he and THI did not stand on equal footing because he was required to enter into the License Agreement as a condition of the Purchase Agreement, the License Agreement was prepared by THI, and there is no evidence that the terms of the License Agreement were subject to meaningful negotiation.

Govan's argument that the attorney fees provision is not valid is untenable. There is no

21

evidence which suggests that Govan did not freely enter into the Purchase Agreement and the Lease Agreement. At the time Govan signed the Lease Agreement, he was under no obligation to complete the purchase of the Facility, so Govan cannot reasonably argue that he had no choice but to sign the Lease Agreement as a condition of the Purchase Agreement. Moreover, there is no evidence that Govan, an experienced businessman who has been involved in other franchised motel businesses, was unaware of the nature and terms of the Lease Agreement or that THI took advantage of Govan in any way. Finally, Govan has not shown that the attorneys' fees provision violates New Jersey public policy. Because Govan has not come forward with evidence to support a finding that the attorneys' fee provision in the License Agreement is unenforceable, the provision must be upheld.

As to THI's trademark violation claim, Govan concedes that he may be called to account for revenue earned during the period of time following termination of the Lease that the property remained marked as a Travelodge. Thus, THI is entitled to summary judgment on its claim for an accounting. The amount Travelodge is entitled to recover on this claim remains to be determined.

### B. Cincinnati Travelodge's motion for summary judgment

Govan brings a cross-claim against Cincinnati Travelodge for fraudulent misrepresentation and breach of duty of good faith based on the alleged misrepresentation of Tom Fuller. Govan claims that a few weeks before the closing, THI came to the Facility to perform an inspection but left without doing so after Fuller informed THI that the property had been sold and an inspection was not necessary. Govan claims that prior to the closing, Fuller falsely represented to Govan that an inspection had in fact occurred and that the Facility had passed.

Cincinnati Travelodge moves for summary judgment on the cross-claim on the ground

22

that Govan cannot establish justifiable reliance to support a finding of fraud because he had notice via THI's punch lists of items that needed to be improved so that the Facility would meet THI's systems standards, Govan personally observed the dramatic deterioration in the Facility on the day of the closing, the Facility was sold to Govan "as is", and Govan failed to conduct an investigation into whether the Facility complied with THI's Systems Standards. Cincinnati Travelodge also asserts that it returned $15,000 of the purchase price to Govan for the cost of repairs to the Facility. In reply, Govan states that he is not basing his fraud claim on misrepresentations regarding the condition of the Facility but on misrepresentations regarding the Facility's compliance with THI's quality assurance standards. Govan also claims that the "as is" clause in the Purchase Agreement cannot excuse fraud.

The Court finds that Govan has come forward with sufficient evidence to create a genuine issue of material fact on his fraud claim against Cincinnati Travelodge. For purposes of the summary judgment motion, the Court must accept as true Govan's statement that Cincinnati Travelodge's agent Tom Fuller falsely represented to Govan that an inspection had been performed prior to the closing and that the Facility had passed the inspection. Whether Govan's reliance on Cincinnati Travelodge's representation concerning the property's compliance with THI's quality assurance standards was reasonable is an issue for the jury to resolve. Accordingly, Cincinnati Travelodge is not entitled to summary judgment on Govan's fraud claim.

In addition to his claim for fraudulent misrepresentation, Govan brings a claim against Cincinnati Travelodge for breach of its duty of good faith. Cincinnati Travelodge has not addressed this claim in its motion for summary judgment. Accordingly, the Court will not decide whether summary judgment is appropriate on this particular claim.

## VII. Motion for jury trial

Govan has filed a motion for a jury trial pursuant to Fed. R. Civ. P. 39(b). Govan seeks to have a jury determine the claims in this case despite the fact that he failed to make a jury demand in his answer. THI opposes Govan's request, claiming that he waived the right to a jury trial in the License Agreement and also waived his right to a jury by failing to make a timely request pursuant to Fed. R. Civ. P. 38. In reply, Govan does not dispute the validity of the waiver of jury trial provision of the License Agreement between THI and Govan. He argues, however, that he has not waived his right to a jury trial on his fraud claims since those claims are not governed by the License Agreement. Govan further argues that THI will not be prejudiced if his request is granted.

THI moves the Court for leave to file a sur-reply to address Govan's argument that his counterclaim and cross-claims are not governed by the License Agreement. Govan opposes THI's motion. Govan has filed a motion to strike alleging that THI filed a sur-reply without obtaining leave of court.

The Court will deny THI's motion for leave to file a sur-reply since additional briefing would not assist the Court in resolving the motion for a jury trial. The Court will deny Govan's motion to strike THI's sur-reply since there is no record of THI having filed a sur-reply.

The Court finds that Govan has waived his right to jury trial on THI's claims against him. Section 17.6 of the License Agreement states as follows:

> Waiver of Jury Trial. The parties waive the right to a jury trial in any action related to this Agreement or the relationship between the licensor, the licensee, any guarantor, and their respective successors and assigns.

THI's claims against Govan clearly relate to the License Agreement and the licensor/licensee

24

relationship between THI and Govan. Thus, Govan has waived his right to a jury trial as to such claims. Govan's motion for a jury trial is moot with respect to his counterclaim against THI since the Court has determined that THI is entitled to judgment on the counterclaim.

The Court will grant Govan's motion for a jury trial on his claims for fraud and breach of the duty of good faith against Cincinnati Travelodge. Cincinnati Travelodge has not opposed Govan's motion for a jury trial, and it does not appear that it has been prejudiced by Govan's delay in requesting a jury trial.

## VIII. Conclusion

In accordance with the foregoing, Travelodge Hotels, Inc.'s motion for summary judgment (doc. 31) is **GRANTED.** Judgment is **GRANTED** in favor of THI on its claims against Govan. Partial judgment for damages is **GRANTED** in favor of THI. THI is awarded damages in the amount of $214,231.57, which includes recurring fees of $72,231.57 and liquidated damages of $142,000.00. The Court reserves ruling on the amount of damages, if any, resulting from the accounting and on the amount of attorney fees THI is entitled to recover. The Court **ORDERS** Govan to account to THI for any and all revenue derived as a result of Govan's unlawful use of the Travelodge marks within **sixty days** of the date of this Order.

Judgment is **GRANTED** in favor of THI on Govan's counterclaims against THI. Govan's counterclaims against THI are **DISMISSED** with prejudice.

Govan's cross-claim for false representations by Cincinnati Travelodge as to the income and revenue of the Facility is **DISMISSED** without prejudice. Cincinnati Travelodge's motion for summary judgment (doc. 33) is **DENIED** as to Govan's cross-claims for fraud and breach of the duty of good faith, and those claims will proceed to jury trial.

Govan's motion for a jury trial (doc. 46) is **DENIED** as to THI's claims against Govan and Govan's counterclaim against THI . The motion is **GRANTED** as to Govan's cross-claims against Cincinnati Travelodge for fraud and breach of the duty of good faith.

THI's motion for leave to file sur-reply (doc. 57) is **DENIED.** Govan's motion to strike sur-reply (doc. 59) is **DENIED.**

**IT IS SO ORDERED.**


S/ Herman J. Weber
HERMAN J. WEBER
SENIOR JUDGE, UNITED STATES DISTRICT COURT


J:\HJWA\01-784kmsjjurylvfilestrk.wpd