IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TRAVELODGE HOTELS, INC., | : | CASE NO. C-1-01-784 |
| Plaintiff, | : | (Judge Weber) |
| v. | : | CIVIL ACTION |
| GOPAL GOVAN, | : | |
| Defendant and Cross-Claim Plaintiff, | : | |
| v. | : | |
| CINCINNATI TRAVELODGE, | : | |
| Cross-Claim Defendant. | : | |

## JOINT FINAL PRETRIAL ORDER

This matter is before the Court pursuant to Rule 16 of the Federal Rules of Civil Procedure.

I. **APPEARANCES:**

    For Cross-Claim Plaintiff(s):   Eric C. Holzapfel and Kevin K. Frank
                                                          Wood & Lamping LLC
                                                          600 Vine Street, Suite 2500
                                                          Cincinnati, OH 45202
                                                           tel: (513) 852-6000

    For Cross-Claim Defendant(s): Alan J. Statman
                                                           Statman, Harris, Siegel & Eyrich, LLC
                                                           2900 Chemed Center
                                                           255 E. 5th Street
                                                           Cincinnati, OH 45202
                                                           tel: (513) 621-2666

## II. **NATURE OF ACTION AND JURISDICTION:**

A. This is an action for fraudulent misrepresentation and concealment, breach of implied obligation to act in good faith.

B. The jurisdiction of the Court is invoked under Title 28 U.S.C. §1332, and 1338, and 1367.

C. The jurisdiction and venue are disputed by Cross-Defendant in its pending Motion for Reconsideration.

## III. **TRIAL INFORMATION:**

A. The estimated length of trial is 3-4 days.

B. Trial to Court will begin on (the parties have not yet been advised as to the trial date).

## IV. **STATEMENT OF THE CASE:**

Cross-Claim Plaintiff's statement: Cross-Claim Plaintiff ("Plaintiff") and Cross-Claim Defendant ("Defendant") entered in to a contract to purchase a hotel property operating under a franchise agreement with Travelodge Hotels, Inc. Provisions in the purchase agreement required that Defendant maintain the property in good condition until the close of sale. Defendant provided Plaintiff with copies of two inspection reports indicating that the property received a passing score by the Travelodge franchisor. However, Defendant concealed a third report from Plaintiff. The third report was performed prior to the close of sale, but resulted in a failing grade.

Without knowing that the third inspection was performed and received a failing grade, Plaintiff asked Travelodge to perform an additional inspection prior to the close of sale. When the Travelodge representative visited the property to perform the inspection, Defendant's property manager sent the inspector away, refusing to allow the inspection. The property manager informed the inspector that the inspection was not necessary because the property had been sold. When Plaintiff asked Defendant's property manager if the inspection had been performed, he answered that the inspection had been performed and that the property received a passing grade.

After the closing, Plaintiff visited the property and realized that the property had fallen into disrepair in violation of the purchase agreement. The property has since failed additional inspections. Due to Defendant's fraudulent misrepresentations and concealment, and Defendant's breach of its implied obligation to act in good faith when entering into the purchase agreement, Plaintiff was damaged. Plaintiff incurred significant costs to repair the property, was induced to pay franchise fees and damages to the Travelodge franchisor, including liquidated damages, pursuant to the franchise agreement, and was forced to incur substantial attorney's fees as a result of this litigation. Plaintiff would not have purchased the hotel property but for Defendant's fraudulent misrepresentations, concealment, and bad faith.

<u>Cross-Claim Defendant's statement:</u> In the fall of 1999, Cross-Claim Plaintiff Gopal Govan ("Govan") began negotiating with Cross-Claim Defendant Cincinnati Travelodge, a California general partnership ("Cincinnati Travelodge" or "Defendant"), for the purchase of a motel. Govan was familiar with Travelodge properties and had contracted with one of Cincinnati Travelodge's partners on a number of other occasions to purchase similar motel properties. In November 1999 and January 2000, Govan visited the motel in order to observe its condition.

As part of the negotiations to purchase the motel, Cincinnati Travelodge's representative, Sue Eastman, provided Govan with financial information for the property, the ground lease, and copies of the two most recent QA inspection reports for the motel. Each of the inspection reports indicated that the motel had received a passing score from the franchisor, Travelodge Hotels, Inc. ("THI"). The negotiations and Govan's personal visits culminated in Govan and Cincinnati Travelodge entering into a Purchase and Sale Agreement for the motel on January 5, 2000 ("Purchase Agreement").

The Purchase Agreement provided that the sale of the motel to Govan by Cincinnati Travelodge was in an "As Is" condition. The Purchase Agreement further provided that Govan was purchasing the motel "with all faults, without any representation by seller or their representatives as to any matter…" The Purchase Agreement specifically provided and Govan represented and warranted that he had "made [his] own independent investigation respecting the Real Property and all other aspects of this transaction, and is relying thereon and on the advice of [his] consultants in entering into [the Purchase] Agreement and, by proceeding with this transaction will be deemed to have determined that the same are satisfactory to Buyer." Govan further represented and warranted to the Cincinnati Travelodge "that Buyer has made such independent investigations as Buyer deems necessary or appropriate concerning the suitability of the Land and the Personal Property and the physical condition of all improvements." This

representation and warranty was material and was relied upon by the Cincinnati Travelodge in proceeding with the sale.

By the Purchase Agreement, the Cincinnati Travelodge did not agree to maintain the property in any specific condition prior to closing. The representations and warranties made by the seller are identified at paragraph 12 of the Purchase Agreement, that is, (a) that the partnership has the power to enter into the transaction; (b) that the agreement did not result in the seller breaching of any of its obligations under any bond, note or other contract; and (c) that there were no judgments or known "written notices from any governmental authority requiring alterations, corrections, additions or improvements to the motel in order to continue the conduct of the motel."

Another condition of the Purchase Agreement required Govan to obtain his own franchise license from THI in order to operate the motel under the "Travelodge" trade name. Govan operated other Travelodge motels and was familiar with the process. Govan completed and filed an application with THI to obtain the franchise license for that motel property. As part of THI's routine procedure for any new franchise license applicant, in March 2000 THI provided Govan with a "punch list" which described changes and up-grades that were required to be made to the motel by Govan in order for Govan to obtain and maintain a Travelodge franchise license. The punch list contained a schedule as to when certain improvements were to be completed. The punch list specifically stated that "[u]pgrades to property exterior, public and guestroom/bath area will be required to meet current [THI] specifications." Thereafter, THI provided Govan with a revised punch list that stated: "[u]pgrades to property exterior, public and guestroom/bath areas will be required to meet current [THI] specifications." Pursuant to Govan's agreement with THI, Govan was to begin punch list improvements no later than 30 days after the effective date of his franchise license agreement and was required to complete such improvements within 120 days after the effective date of his franchise license agreement.

Govan testified at deposition that he felt comfortable that the punchlist items could be completed with little trouble. Moreover, in a letter to the landowner (Govan was purchasing a leasehold interest and the motel improvements), Govan stated that he intended to completely upgrade 25 rooms at a time by providing new furnishings and fixtures, wall covering, painting all ceilings and doors, replacing all soft goods, bed spreads and curtains and televisions. At deposition, Govan admitted he had no intention of making any of these improvements.

On February 21, 2000, THI conducted a routine QA inspection of the motel. The motel received a failing score due to housekeeping and operational issues,

including a missing name tag on the front desk clerk. THI policies dictate that after a failing score on an inspection, a follow up inspection is required to occur within 90 days to determine if the property has corrected its deficiencies.

The closing of the motel was scheduled to take place on May 12, 2000. Govan visited the motel on the date of the closing. He testified at deposition that he observed trash and other debris in front of the motel, cracks and holes in the parking lot, and boxes and a broken picture frame in the lobby. Govan did not further inspect the motel and specifically did not inspect any of the guest rooms. After this inspection, Govan proceeded to close on his purchase of the motel.

After the closing, Govan claimed that he discovered that a number of items of personal property he was purchasing with the motel was allegedly damaged or missing. As a result, Cincinnati Travelodge refunded $19,367.54 to Govan for allegedly broken individual room air conditioners, missing television sets and clock radios, and the alleged broken phone and reservation systems.

Govan now claims that he was fraudulently induced to enter into the Purchase Agreement by Defendant, and seeks damages for the alleged fraud and breach of the covenant of good faith and fair dealing.

In the Purchase Agreement, Govan represented and warranted to Cincinnati Travelodge: (a) that he was relying upon his own independent investigations regarding the property and all aspects of his purchase; (b) that Defendant did not make any representations to Govan with respect to the suitability of the real property or the physical condition of all improvements located thereon, (c) that Govan made all necessary or appropriate inspections concerning suitability of the real property and the physical condition of all improvements located thereon; and (d) that Govan agreed to accept the motel in its present "AS IS" condition "WITH ALL FAULTS" as of the closing of the sale of the transaction.

By closing the transaction, Govan also generally released any and all claims against Defendant as to the condition of the property, whether known or unknown, under California Civil Code §1542. Moreover, Govan reaffirmed the terms of the agreement by entering into a written amendment to the Purchase Agreement on October 23, 2000. Each of these contract provisions and actions constitute affirmative defenses to the alleged fraud and breach of duty of good faith claims of Govan against Defendant.

## V. **TRIAL DETERMINATIONS:**

### A. **FACTS**

#### 1. **Stipulated Facts:**

The parties stipulate as to the following facts:

1. In the fall of 1999, Govan began negotiating with a representative of the Cincinnati Travelodge for the purchase of a motel building, ground lease and personal property located at 3244 Central Parkway, Cincinnati, Ohio.
2. Govan had previously purchased Travelodge motel properties through Ms. Eastman, a representative of one of Defendant's partners.
3. In approximately October or November of 1999, and January 2000, Plaintiff visited the property in order to observe its condition. During this time frame, Ms. Eastman provided Govan with property financials, the two most recent THI Quality Assurance inspection reports dated September 1998 and June 1999.
4. The motel received a "passing" grade on each of the September 1998 and June 1999 QA inspection reports.
5. On January 5, 2000, Govan and Cincinnati Travelodge, a California general partnership, entered into a Purchase and Sale Agreement for the motel property that contains various and representations between the parties.
6. Govan entered into an amendment to the Purchase Agreement with Defendant on October 23, 2000 whereby all terms and conditions remained unchanged and in full force and effect except for the purchase price credit and counterparts.
7. Under the terms of the Purchase Agreement, Govan was required to obtain the franchise license agreement necessary to continue to operate the motel as a Travelodge and become a Travelodge franchisee. The Purchase Agreement provided Plaintiff thirty (30) days to conduct a due diligence investigation concerning the property.
8. Govan did not hire any third parties to inspect the physical condition of the motel.
9. In February of 2000, THI conducted a routine Quality Assurance inspection of the motel property. After a failed inspection, THI has a policy to reinspect a property within 90 days.
10. On or around March 1, 2000, due to his application to become a Travelodge licensee at the Cincinnati motel property, Govan was provided by THI with a "punch list". This "punch list" described the changes and up-grades required to be made by Govan to the motel once Govan had

        completed his purchase of the motel property and obtained his license to use the Travelodge name and began to operate the motel.

11. Govan and THI entered into a License Agreement on or about March 8, 2000.
12. On or around March 16, 2000, Govan was provided by THI with an amended "punch list".
13. Prior to the closing, Govan's attorney sent a letter to the landowner, enclosing certain documents, including personal financial statement of Govan and his wife, a business resume of Govan, plans for upgrading and/or renovating the motel property, a Consent to Encumbrance and Amendment to Lease Agreement, and an Estoppel Certificate.
14. On or about the date of the closing of Govan's purchase of the property, Govan personally visited the motel property. Govan believed that the condition of the property had significantly deteriorated since his prior visit. He observed trash and other debris in front of the motel, cracks and holes in the parking lots, and boxes and a broken picture frame in the lobby. On that date, Govan did not inspect any guest rooms, passageways, ice/vending areas, laundry, equipment or maintenance areas.
15. The closing of the motel property occurred on May 12, 2000.
16. After close of escrow, Govan claimed that certain items were missing or damaged. Cincinnati Travelodge agreed to compensate Govan for these alleged missing or damaged items.
17. On June 27, 2000, the City of Cincinnati cited the subject property for numerous building code violations.
18. On August 21, 2000, Plaintiff received notice from THI that the motel had failed an inspection on August 14, 2000.
19. On August 2, 2001, Plaintiff received notice from THI that his license to operate as a Travelodge had been terminated.

## 2. **Disputed Facts:**

The parties dispute the following facts:

1. Whether from the time that Plaintiff had first inspected the property in the fall of 1999 to the date of closing in May of 2000, the condition of the subject property dramatically deteriorated.
2. Govan's contention that Defendant was required to maintain the property in good condition until the close of the sale.
3. Whether Govan was aware of the February 21, 2000 THI inspection.
4. Whether Defendant had any duty to disclose the February 21, 2000 THI inspection report to Govan.
5. Whether Defendant's manager sent a THI inspector away from the property.

6. Whether Defendant's manager refused to allow a THI inspection of the property.
7. Whether the THI inspector's visit was initiated by Govan.
8. Whether the THI inspector's visit was a routine Quality Assurance inspection follow up by THI due to the February 21, 2000 failing score.
10. Whether the February 21, 2000 failing score was primarily due to housekeeping and operational point deductions.
9. Whether Govan contacted THI prior to the closing to request that a further inspection of the property be performed by THI.
10. Whether when Plaintiff spoke with THI's quality assurance department they assured him that they would be flexible with regard to modifying the agreed upon schedule for the required "punch list" improvements.
11. Whether Plaintiff complied with the "punch list" requirements.
12. Whether Plaintiff Govan had any intention of making any of the promised improvements included in his attorney's correspondence to the landowner.
13. Whether Plaintiff spoke to Fuller, an employee of Defendant Cincinnati Travelodge, at his visit on or about May 12, 2000 to the property.
14. Whether Tom Fuller told Govan the property had passed the most recent inspection by THI with "no problems."
14. Whether Plaintiff discovered after closing the purchase that the property was not in compliance with THI's standards.

## B. APPLICABLE PROPOSITIONS OF LAW:

### 1. Agreed Applicable Propositions of Law:

The following applicable propositions of law are agreed to by the parties:

#### a. Fraudulent misrepresentation and concealment

Plaintiff must prove the following elements: (1) a representation or, where there is a duty to disclose, concealment; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or with reckless disregard for the truth; (4) with the intent to mislead; (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the justifiable reliance.

#### b. Breach of implied obligation to act in good faith

Every contract, including contracts for the sale of property, includes an implied obligation to act in good faith and deal fairly. Each party entering into a contract must not mislead or misrepresent facts material to the transaction.

c. Affirmative Defense

A party's alleged injuries and damages, if any, are barred or reduced by his independent acts of negligence, contributory negligence and/or assumption of the risk.

d. Affirmative Defense

A party's alleged injuries and damages, if any, directly and proximately resulted from the independent acts of third persons over whom the primary defendant exercised no direction or control.

e. Affirmative Defense

Doctrines of payment, settlement and/or release bar all claims.

f. Affirmative Defense

Release of all claims under California Civil Code §1542.

g. Affirmative Defense

Failure to mitigate alleged damages.

h. Affirmative Defense

No special or fiduciary relationship between the parties such that there is a duty to disclose.

i. Affirmative Defense

Unreasonable reliance upon the alleged representations.

j. Affirmative Defense

Unclean hands.

k. Affirmative Defense

Failure to exercise ordinary care.

l. Affirmative Defense

Breach of conditions precedent.

m. Purchase Agreement states that California law controls.

2. **Disputed Applicable Propositions of Law:**

The following applicable propositions of law are disputed by the parties:

a. Cross-Claim Plaintiff: <u>Not Applicable</u>

b. Cross-Claim Defendant: <u>Not Applicable</u>

C. **Witnesses:**

Cross-Claim Plaintiff: Gopal "Sam" Govan, Shawn Patel, Shane Blankenship (likely by deposition), Tom Fuller, Sue Eastman, Shirley Shanks, Angela Peavley.

Cross-Claim Defendant: Sue Eastman, Joe Maddux, Person Most Knowledgeable from THI regarding QA Inspections; Person Most Knowledgeable from THI regarding changeover inspections; Gopal "Sam" Govan, Shawn Patel, Shane Blankenship, Tom Fuller, Shirley Shanks and Angela Peavley on cross-examination.

(10 different combined witnesses)

The parties reserve the right to call without prior notice to opposing counsel rebuttal witnesses whose testimony could not reasonably be anticipated.

D. **Expert Witnesses:**

The parties propose to call the following number of expert witnesses, all of whom have been disclosed to the opposing side:

Cross-Claim Plaintiff: <u>None</u>

Cross-Claim Defendant: <u>None</u>

The curriculum vitae of the expert witnesses and a binding summary of their written reports are attached as Appendix <u>Not Applicable</u>

The parties certify we have complied with Rule 26 of the Federal Rules of Civil Procedure pertaining to expert testimony.

E. **Exhibits:**

Copies of exhibits that the parties intend to use at trial and/or introduce into evidence have been provided to opposing counsel.

Pursuant to Section "E" of the Court's Order Instructing Certain Pretrial and Trial Procedures, Plaintiff intends to use the following deposition transcripts at trial: Deposition of Shane Blankenship, March 19, 2003 (in its entirety in lieu of direct testimony, including but not limited to pp. 22:22-25, 23:1-5; 32:15-25; 17-21; 36-39, 40:1-17; 43:15-25, 44:1-18; 53-55, 57:7:25, 58-62:1-8; 62:9-25, 63-68:1-12).

Plaintiff intends to introduce portions of Plaintiff Travelodge Hotels, Inc.'s Responses to Defendant Gopal Govan's First Combined Set of Interrogatories and Requests for Production of Documents, particularly Responses to Interrogatories No. 3, 4, and 9 and the documents incorporated thereto. Plaintiff intends to introduce portions of Cincinnati Travelodge's Responses to Gopal Govan's Discovery Requests, including but not limited to Responses to Interrogatories No. 1, 2, 3, 4, 5, 6, 8, and 10, and the documents incorporated thereto.

Defendant intends to use the following deposition transcripts at trial: Deposition of Gopal Govan. Defendant also intends to introduce at trial the exhibits as attached to the Deposition of Gopal Govan.

The following Motions are pending at this time:

(1) Cross-Claim Defendant's Motion for Reconsideration;

(2) Plaintiff Travelodge Hotels, Inc. ("THI") Request for Attorney's Fees, and Motion to Compel (unrelated to the pending trial).

IV. **SETTLEMENT EFFORTS:**

The parties have made a good faith effort to negotiate a settlement.

V. **TRIAL TO THE COURT:**

The parties will submit Findings of Fact and Conclusions of Law in accordance with Section H of the Order Instructing Certain Pretrial and Trial Procedures.

IT IS SO ORDERED.

_____
Herman J. Weber, Senior Judge
United States District Court

_____
Counsel for Cross-Claim Plaintiff


_____
Counsel for Cross-Claim Defendant

204016.3