# EXHIBIT B-PART II

breach."[7] *See Wasserman's*, 645 A.2d at 108; *see also Ramada Franchise Sys., Inc. v. Hanna Hotel Enters., L.L.C.*, 147 F. Supp. 2d 840, 848 (N.D. Ohio 2001) (applying New Jersey law). But in opposing THI's motion for summary judgment, Govan ignored the first presumption entirely, never once suggesting to the District Court that THI could easily estimate its future damages. (*See* R.36, Govan's Summary Judgment Opp., Apx. pgs. 185-191.) And while Govan did attempt in the District Court to refute the second presumption—urging that THI's claim for Liquidated Damages "bear[s] no relationship to the damages actually sustained"—he based that argument exclusively on the *Shree Ganesh* holding and the supposed "disparity" between the two methods of computing Liquidated Damages under the License Agreement. (*See id.* at 22, Apx. pg. 190.) Nowhere in his District Court

---

[7] Govan mischaracterizes his burden of overcoming the presumption of reasonableness. There is no "two-part test for determining whether a liquidated damages clause is valid." (*Cf.* Brief of Appellant at 9.) Rather, the Supreme Court of New Jersey has articulated several relevant factors, including not only the "difficulty in assessing damages" and the "actual damages sustained," but also "the intention of the parties" and their "bargaining power." *See Metlife Capital*, 732 A.2d at 495. And ultimately, no single factor is dispositive; rather, reasonableness is a function of "'the totality of the circumstances.'" *Id.* (quoting *Wassenaar v. Panos*, 331 N.W.2d 357, 361 (Wis. 1983)). As Govan focuses on only two of the relevant factors, THI limits its response accordingly but notes that under the "totality of the circumstances" test, the ultimate determination of reasonableness is left "'to the sound discretion of the trial court.'" *Id.* (quoting *Wasserman's*, 645 A.2d at 110). Here, of course, the District Court in its discretion considered all relevant factors, including the intention of the parties and their bargaining positions, and found the Liquidated Damages provision to be reasonable. (R.65, Summary Judgment Order at 20-21, Apx. pgs. 86-87.)

briefing did Govan claim that the Liquidated Damages formulae in the License Agreement were themselves unreasonable forecasts of THI's actual future damages.

Govan has dramatically changed his tune on appeal. Gone is the reliance on *Shree Ganesh*—or even any citation to that decision—and in fact Govan has the audacity now to fault the District Court for entertaining the disparity argument Govan himself advanced below. (*See* Brief of Appellant at 6 ("It was also error for the court to have compared the two methods of calculating liquidated damages with each other instead of with the actual damages.").)[8] In place of the *Shree Ganesh*/disparity argument, Govan now urges that he can overcome both of the presumptions he identifies: that "[i]t would be fairly easy . . . to determine THI's actual damages" (Brief of Appellant at 9) and that the Liquidated Damages

---

[8] The District Court, in addition to holding that Govan had "presented no evidence as to actual damages," compared the two methods of calculating Liquidated Damages in the License Agreement, finding "the discrepancy in the amounts" to be "not so great as to lead to the conclusion that the provision is unreasonable." (*See* R.65, Summary Judgment Order at 21, Apx. pg. 87.) The District Court addressed the discrepancy question only because Govan himself had raised it. While THI wholeheartedly concurs with Govan's apparent realization that the *Shree Ganesh*/disparity analysis misapplies New Jersey law, Govan cannot complain on appeal that the District Court entertained Govan's own flawed argument. *See, e.g., Harvis v. Roadway Express, Inc.*, 923 F.2d 59, 60-61 (6th Cir. 1991) (applying "invited error" doctrine).

provision of the License Agreement "does not provide a reasonable forecast" of THI's "actual harm." (*Id.* at 12 (initial capitalization removed).)[9]

In fact, as shown below, Govan cannot overcome either presumption. But the Court need not even reach that determination, because Govan "'cannot . . . advance new theories or raise new issues in order to secure reversal of the lower court's' grant of summary judgment." *See Wright*, 794 F.2d at 1157 (citation omitted); *see also Russ' Kwik Car Wash*, 772 F.2d at 217. Having failed to preserve his current challenges to the enforceability of the Liquidated Damages provision, Govan has waived appellate review. For that reason alone, the Court should affirm.

## II. GOVAN'S CHALLENGES TO THE LIQUIDATED DAMAGES PROVISION FAIL ON THEIR MERITS.

### A. This Court Reviews the District Court's Determination of Reasonableness for Abuse of Discretion.

THI acknowledges that the summary judgment order on appeal is normally reviewed *de novo*. *E.g.*, *Mas One Ltd. P'ship v. United States*, 390 F.3d 427, 429 (6th Cir. 2004). It is also true that under New Jersey law, "whether a stipulated damages clause is enforceable is a question of law for the court," *see Wasserman's*, 645 A.2d at 110, and that issue of law also normally calls for *de novo* review. *E.g.*,

---

[9] Govan couches his attack on the Liquidated Damages provision in four separately numbered arguments, but the second, third, and fourth arguments all relate to the second presumption—whether the Liquidated Damages are a reasonable forecast of just compensation for the future harm.

12

*Rittenhouse v. Eisen*, 404 F.3d 395, 396 (6th Cir. 2005). Even if the District Court's grant of summary judgment is reviewed *de novo*, Govan cannot establish reversible error.

Nevertheless, as explained above (*see supra* note 7), the ultimate determination of reasonableness is left to "'the sound ***discretion*** of the trial court.'" *See Metlife Capital*, 732 A.2d at 495 (quoting *Wasserman's*, 645 A.2d at 110) (emphasis added). Accordingly, this Court should apply an abuse-of-discretion standard in reviewing the District Court's finding that the summary judgment record was insufficient for Govan to overcome the presumption that the Liquidated Damages provision was valid. Under that standard, reversal is warranted only if the Court has "a definite and firm conviction that the trial court committed a clear error of judgment." *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989).

### B. Govan Has Failed to Overcome the Presumption that the Liquidated Damages Provision Is Reasonable.

As explained above, Govan had the burden under New Jersey law to overcome the presumption that the Liquidated Damages provision was reasonable. *See Metlife Capital*, 732 A.2d at 499. Moreover, he also had the burden, in opposing THI's motion for summary judgment, to come forward with evidence establishing a genuine issue of material fact. *See* Fed. R. Civ. P. 56(e); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 324 (1986). With respect to the issues he raises for the first time on appeal, Govan met neither of his burdens.

  1. <u>Govan Has Failed to Overcome the Presumption That the Actual Future Harm to THI Is Difficult to Estimate.</u>

The District Court held that there was "no evidence that the actual damages are easily calculated." (R.65, Summary Judgment Order at 20, Apx. pg. 86.) Indeed, the ***only evidence*** before the District Court on this point was Govan's acknowledgment in the License Agreement that "actual damages will be difficult or impossible to ascertain" (R.1, Ex. A to Complaint [License Agmt.] at 24, Apx. pg. 52) and the unrefuted testimony of THI's Vice President of Franchise Administration to the same effect. (R.31, Ex. 3 to THI's Motion for Summary Judgment [Darby Aff., ¶ 9], Apx. pg. 164.) Govan submitted ***no*** evidence to the contrary. Similar evidence has repeatedly sustained the enforceability of liquidated damages clauses with substantially identical terms. *See Ramada Franchise Sys., Inc. v. Hanna Hotel Enters., L.L.C*, 147 F. Supp. 2d at 848-49 (recognizing that the "weight of authority under New Jersey law . . . provides that the liquidated provision at issue is reasonable"); *see also Days Inn of Am., Inc. v. Patel*, 88 F. Supp. 2d 928, 935-36 (C.D. Ill. 2000) (similar evidence sustaining enforceability

of similar liquidated damages clause); *Ramada Franchise Sys. v. Motor Inn Inv. Corp.*, 755 F. Supp. 1570, 1578 (S.D. Ga. 1991) (same).[10]

Unable to establish that he rebutted THI's evidence in the District Court, Govan is left merely to insinuate that THI could have "extrapolated" its future damages based upon the entire $72,231.57 that the District Court determined Govan owed for the period from the Hotel's opening through the termination of the License Agreement. (*See* Brief of Appellant at 9.) It bears mention that the extrapolation Govan has suggested, if applied over the course of the thirteen-plus years of the remaining term of the License Agreement, would have yielded a damages award far in excess of the $142,000 in liquidated damages actually awarded. Indeed, the District Court held that "THI's actual damages are not necessarily limited to 24 months, which is the period of time used in calculating the liquidated damages sought by THI, but could potentially extend over the 15-year term of the lease." (*See* R.65, Summary Judgment Order at 21, Apx. pg.

---

[10] Though unreported, there are many other examples of cases enforcing substantially identical liquidated damages provisions. *See, e.g., Ramada Franchise Sys., Inc. v. Kassed Hotels, Inc.* at 9-11; *Ramada Franchise Sys., Inc. v. Polmere Lodging Corp.*, No. 98-2809 (W.G.B.N.) (D.N.J. July 30, 1999); *Days Inns of Am., Inc. v. VNR, Inc.*, No. 98-2507 (A.J.L.N.) (D.N.J. Mar. 23, 1999); *Ramada Franchise Sys., Inc. v. Royal Vale Hospitality of Cincinnati, Inc.*, No. 02 C 1941, 2005 WL 435263, at *12 (N.D. Ill. Feb. 16, 2005).

87.)[11]    But the ability to extrapolate a number that may be relevant to a determination of actual damages does not establish that the actual future damages were easily estimable; actual future damages would also depend on at least two additional factors that were incapable of ready estimation.

First, as THI established through summary judgment evidence, "gross room revenues at any given hotel can drastically fluctuate from month to month" based upon a variety of unpredictable "factors" affecting the economy generally and the travel industry specifically. (R.31, Ex. 3 to THI's Motion for Summary Judgment [Darby Aff., ¶ 9], Apx. pg. 164.) These factors are particularly difficult to estimate over a lengthy period of time, such as the thirteen years remaining on the License Agreement at the time of termination.

Second, Govan himself suggests that THI had "a duty to mitigate its damages" and therefore should not "have almost 15 years as a measuring stick." (*See* Brief of Appellant at 10.) Thus, Govan thoroughly undercuts his own reliance on extrapolation as a reasonable method of estimating actual future damages. And

---

[11] Govan suggests that the District Court should have considered "3.5 years of operational data" from the Hotel at "the time that summary judgment was granted" (*see* Brief of Appellant at 11), ignoring that under New Jersey law the only two potentially relevant reference points are "the time of contract formation" and "the time of the breach." *Wasserman's*, 645 A.2d at 107. And, notably, he points to no evidence of record regarding the "3.5 years of operational data" and acknowledges that for "the latter months" of that time period the Hotel did not carry "the Travelodge flag." (Brief of Appellant at 11.)

CLE - 891887.2

Govan offers no basis (evidentiary or otherwise) for the Court to determine the likely impact of mitigation.[12] Far from meeting his burden of establishing that THI could readily estimate its actual future damages, Govan's argument corroborates THI's unrefuted evidence—that its actual future damages were "extremely difficult to predict." (R.31, Ex. 3 to THI's Motion for Summary Judgment [Darby Aff., ¶ 9], Apx. pg. 164.)

Govan ultimately relies on a landlord/tenant case, *River Road Associates v. Chesapeake Display & Packaging Co.*, 104 F. Supp. 2d 418 (D.N.J. 2000), in the hope of analogizing his breach of the License Agreement to a tenant's breach of a lease agreement. But a critical difference between this case and *River Road Associates* once again proves THI's point. As Govan acknowledges, "the monthly rent" in *River Road Associates* "was stated in the lease." (Brief of Appellant at 10.) Here, by contrast, the Recurring Fees under the License Agreement "can drastically fluctuate from month to month." (R.31, Ex. 3 to THI's Motion for Summary Judgment [Darby Aff., ¶ 9], Apx. pg. 164.) That distinction illustrates

---

[12] Although the prospect of a duty to mitigate confirms the difficulty in estimating THI's actual future damages, the mitigation issue is otherwise immaterial. "If a liquidated-damages clause is valid, the nonbreaching party does not have a duty to mitigate damages following breach." 22 Am. Jur. 2d *Damages* § 538 (2003).

precisely why THI was entitled to enforce the Liquidated Damages provision—and why Govan has failed to meet his burden of establishing otherwise.[13]

  2. <u>Govan Has Failed to Overcome the Presumption That the Liquidated Damages Provision Represents a Reasonable Forecast of Just Compensation for the Future Harm Caused by His Breach.</u>

    a. <u>Govan Submitted No Evidence Refuting that $2,000 Per Room Was a Reasonable Forecast of THI's Future Damages—a Conclusion Also Warranted As a Matter of New Jersey Law.</u>

Govan has also failed to meet his burden of overcoming the presumption that THI's minimum Liquidated Damages of $2,000 per room was "a reasonable forecast of just compensation for the harm" caused by his breach. *See Wasserman's*, 645 A.2d at 108. Govan in fact agreed in the License Agreement that this formula was "a reasonable pre-estimate of the damages that will be incurred" and was "in place of [THI's] claims for lost future Recurring Fees under the Agreement." (R.1, Ex. A to Complaint [License Agmt.] at 24 and § 12.1, Apx.

---

[13] Another critical distinction is that the claimed right to liquidated damages in *River Road Associates* began ***after*** the end of the lease, not as a result of an early termination brought about by the tenant's default. The contract essentially provided that the landlord could "reinstate" the lease if the tenant failed to correct "material structural defects" in the premises. *See* 104 F. Supp. 2d at 419. The court held that this provision impermissibly permitted the landlord indefinitely to "sit idly by and recover monthly rental payments without making any effort to relet or repair the premises" and thus was "an unreasonable forecast of the harm anticipated in the event of a breach." *Id.* at 424. Here, by contrast, the Liquidated Damages available to THI, even under the minimum $2,000-per-room calculation, are capped by the number of Hotel rooms (seventy-one).

CLE - 891887.2

pp. 52, 41-42.) And, again, he offered no evidence to the District Court—and points to none now—to establish the contrary.

As Govan acknowledges, "the liquidated damages must only be 'reasonably related' to the actual damages." (*See* Brief of Appellant at 13.) Govan had a full opportunity to take discovery of THI with respect to its method of arriving at the $2,000-per-room formula, yet he uncovered no evidence to support his conclusory statement that the formula is not reasonably related to THI's forecast of damages, much less that it is "arbitrary." (*See id.*) Govan simply cannot meet his burden of overcoming the presumption of reasonableness with this sort of unsupported innuendo. In fact, "[t]he weight of authority under New Jersey law" provides that precisely such a liquidated damages provision—$2,000 per room—is reasonable in the hotel franchising business. *See Ramada Franchise Sys., Inc. v. Hanna Hotel Enters., L.L.C,* 147 F. Supp. 2d at 848 n.3 (citations omitted).

      b.    <u>Though Immaterial Here, the Recurring Fee Calculation of Liquidated Damages Under the License Agreement Is Neither Speculative Nor Punitive.</u>

Govan also faults the District Court for comparing the two formulae for Liquidated Damages under the License Agreement as part of its assessment that the minimum $2,000-per-room calculation was a reasonable forecast of THI's damages. In fact, however, the *Shree Ganesh*/disparity analysis has nothing to do with New Jersey law, which requires the District Court to compare the Liquidated

19

Damages to a reasonable forecast of *actual* damages, not to an alternative calculation of *liquidated* damages. To make matters worse, Govan advances his appellate argument despite his knowledge that the District Court addressed this issue merely to indulge Govan's sole summary judgment argument below. (*See supra* note 8.)

Nevertheless, Govan brazenly attacks the comparison on appeal by scrutinizing the twenty-four months of Recurring Fees formula, which is tied to "the motel's gross revenues" (*see* Brief of Appellant at 15), even though the District Court's award was for the minimum $2,000-per-room amount. Relying on the *Wasserman's* holding that "gross receipts do not reflect actual losses incurred" (*see id.* (citing *Wasserman's*, 645 A.2d at 109)), Govan incorrectly urges that the twenty-four months of Recurring Fees calculation, though estimable, is inherently speculative and unrelated to a forecast of THI's actual losses. But the comparison, even if relevant, is a comparison of apples to oranges.

As explained above, the Recurring Fees are based on a percentage of the Hotel's monthly gross revenues. (*See* R.1, Ex. A to Complaint [License Agmt.] § 7.1.1, Apx. pg. 36.) These same Recurring Fees are the bases for the alternative twenty-four months of Recurring Fees calculation of Liquidated Damages. Thus, in forecasting actual future damages, Govan and THI agreed to cap those damages by a formula that approximated the ***same payment stream*** as the License

20

Agreement itself—just as if Govan had not breached—but limited the length of the future stream to twenty-four months, rather than the remainder of the fifteen-year term, implicitly recognizing the potential impact of mitigation. Thus, by definition, this payment stream was directly related to THI's actual losses.

The payment stream here is in no fashion analogous to the gross revenues at issue in *Wasserman's*. There, the landlord terminated the lease, entitling the ***tenant*** to lost profits caused by the early termination. The liquidated damages were intended to compensate the tenant for loss of use of the property. Under such circumstances, where the damaged party lost revenues but also saved "expenses," reliance on gross revenues for a damages calculation "run[s] the risk of being found unreasonable." *See id.*[14] The *Wasserman's* situation would be comparable to this case only if ***Govan*** were suing for damages caused by THI's termination; the motel operator's profits are based not on gross revenues, but on net profits after deducting expenses saved as a consequence of the breach.

Here, however, the future damages sought by ***THI*** are comprised solely of lost Recurring Fees that Govan no longer pays under the terminated License Agreement. THI's losses stemmed not from the lost use of property, but from the

---

[14] Moreover, Govan misstates the holding in *Wasserman's* by attempting to suggest that there is a *per se* rule that liquidated damages based on gross revenues are speculative. Instead, the court in *Wasserman's* held that the use of gross revenues was "among" the "relevant considerations" in determining reasonableness. *See* 645 A.2d at 110.

21

loss of the very revenue stream that the Liquidated Damages provision was designed to rectify. Furthermore, Govan has failed to establish that THI would have saved after termination *any* incremental expenses associated with the Recurring Fees to be earned over the course of the License Agreement. He has therefore failed to overcome the presumption that the Liquidated Damages provision is reasonable.[15]

        c.     The Award of the Minimum $2,000-Per-Room Amount As Liquidated Damages Is Not a Penalty Merely Because It Is the Greater of Two Alternate Calculations.

Govan's final argument urges, with no legal support, that a liquidated damages provision providing for the "greater of" two alternative calculations is automatically an unenforceable penalty because it "bears no relation to THI's actual damages." (Brief of Appellant at 16-17.) But the test is not whether the minimum $2,000-per-room amount exceeds the amount based upon twenty-four months of Recurring Fees (which is the maximum Liquidated Damages); the test is whether the Liquidated Damages provision here was a reasonable forecast of THI's actual future damages. *See Wasserman's*, 645 A.2d at 108.

---

[15] Indeed, to accept with no supporting evidence Govan's assertion that the formula is presumptively speculative would once again allow Govan to undermine the burden he bears, under New Jersey liquidated damages law, to refute the presumption of reasonableness.

22

CLE - 891887.2

The District Court recognized, in holding that "THI's actual damages are not necessarily limited to 24 months" (*see* R.65, Summary Judgment Order at 21, Apx. pg. 87), that the minimum $2,000-per-room amount was a reasonable pre-estimate to compensate THI for a loss of up to thirteen years of revenue stream.  **Both** the minimum **and** the maximum amount of Liquidated Damages can serve as reasonable forecasts of THI's potential damages; the mere fact that the Liquidated Damages provision calls for the "greater of" the two otherwise-enforceable alternatives does nothing to refute its validity, *see Ramada Franchise Sys. v. Motor Inn Inv. Corp.*, 755 F. Supp. at 1579, or to cast doubt upon the reasonable forecast represented by the minimum $2,000-per-room amount on its own.  Govan has thus failed to overcome the presumption of validity that attaches to the Liquidated Damages provision in this case, and he cannot circumvent that failing with empty rhetoric raised for the first time on appeal.

23

## CONCLUSION

For the foregoing reasons, the decision of the District Court granting summary judgment to THI should be affirmed.

OF COUNSEL:

HAHN LOESER & PARKS LLP

Respectfully submitted,

*/s/ Rose Marie Fiore*

Steven A. Goldfarb (Ohio Bar #0030186)
Rose Marie Fiore (Ohio Bar #0065243)

3300 BP Tower
200 Public Square
Cleveland, Ohio 44114-2301
Telephone: (216) 621-0150
Facsimile: (216) 241-2824

Attorneys for Plaintiff-Appellee Travelodge Hotels, Inc.

## CROSS-DESIGNATION OF APPENDIX CONTENTS

Plaintiff-Appellee Travelodge Hotels Inc., pursuant to 6th Cir. R. 30(b), hereby designates the following additional parts of the record to be included in the Joint Appendix:

| DESCRIPTION OF ITEM | DATE FILED IN DISTRICT COURT | RECORD ENTRY NUMBER |
|---|---|---|
| Exhibit A to Complaint (License Agreement) | 11/13/01 | 1 |
| Exhibit 3 to Motion By Plaintiff Travelodge Hotels, Inc. For Summary Judgment (Affidavit of James D. Darby) | 4/14/03 | 31 |

## CERTIFICATE OF SERVICE

Two copies of the foregoing Final Brief of Plaintiff-Appellee Travelodge Hotels, Inc. were served upon:

Eric C. Holzapfel
Kevin Frank
Wood & Lamping LLP
600 Vine Street, Suite 2500
Cincinnati, Ohio 45202

by regular U.S. Mail, this 6th day of July, 2005.

_____
One of the Attorneys for Plaintiff-Appellee
Travelodge Hotels, Inc.